IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMIE CARROLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-01177 (RDA/TCB) |
| ) | |
| AMAZON DATA SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendant Amazon Data Services, Inc.'s Motion to Dismiss Count Three of Plaintiff's Complaint. Dkt. 8. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 9), Plaintiff Jamie Carroll's Opposition (Dkt. 13), and Defendant's Reply (Dkt. 14), the Court grants the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background

Plaintiff Jamie Carroll alleges three counts against her employer, Defendant Amazon Data Services, Inc., in violation of Title VII of the Civil Rights Act of 1964: (1) discrimination against Plaintiff on the basis of her race and sex; (2) retaliation; (3) hostile work environment. Dkt. 1 ¶¶ 76-89. This Court accepts all facts alleged within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff is an African American woman who was employed by Defendant from October of 2018 to September of 2020 as a Rack Decom Datatech technician. Dkt. 1 ¶¶ 8-10. In September of 2019, Plaintiff met with Amber Klimczyk ("Klimczyk"), Defendant's Human Resources

Business Partner, and complained about discrimination on the basis of her sex and race by Sean Sandberg ("Sandberg") and Josh Clarke ("Clarke"), Defendant's Decom Managers. *Id.* ¶ 11. Plaintiff alleges that they refused to allow her to participate in the same special IT projects and travel opportunities as her white male peers. *Id.* ¶¶ 12-13.  Sandberg and Clarke stated that Plaintiff's underperformance made her ineligible for the opportunities, citing instances of tardiness and failing to decommission enough racks.[1]  *Id.* ¶ 14. Yet Plaintiff's co-worker, Ryan Hughes, allegedly received special IT assignments and travel opportunities despite his habitual tardiness and failure to decommission enough racks. *Id.* ¶ 15.  Klimczyk informed Plaintiff that she would be issuing her a final written warning for lateness and took no action regarding Plaintiff's complaints of discriminatory treatment. *Id.* ¶¶ 16, 20.

On or around October 9, 2019, Plaintiff allegedly complained to Sandberg about Danny Alfred ("Alfred"), another Rack Decom Datatech for Defendant, for continuously touching her hair after being asked to stop. *Id.* ¶ 21.  She also complained to Alfred's Decom Manager, Dave McMahon ("McMahon"). *Id.* ¶ 22.  Sandberg and McMahon allegedly took no action to address Plaintiff's complaints. *Id.* ¶¶ 21-23.

In or around November 2019, Plaintiff requested and received approval from Symphonee Lindsey, Amazon's Senior Human Resources Manager, to transfer from Sandberg and Clarke's management, citing disparate treatment in comparison to her white male counterparts. *Id.* ¶ 28. On November 26, 2019, Plaintiff began working under McMahon. *Id.* ¶ 29. After her transfer, McMahon allegedly informed Plaintiff that if she continued to complain of racial discrimination or disparate treatment, she would be terminated. *Id.* ¶ 30. On a weekly basis following the transfer,

---

[1] Although the process of decommissioning a rack is not defined in the Complaint, this Court understands this task as being specific to Plaintiff's general IT responsibilities.

Klimczyk called McMahon to inquire about Plaintiff's performance. *Id.* ¶ 31. During this time, Plaintiff alleges she performed her job duties at an equal or superior level to her white male counterparts. *Id.* ¶ 32.

Despite her performance, according to Plaintiff, McMahon denied Plaintiff a pay raise, stating that the denial was because Plaintiff received a prior final written warning from her previous manager and was underperforming—although McMahon did not specify any deficiencies. *Id.* ¶¶ 33-35. Plaintiff's white male counterparts, Ryan Hughes and Chris Wills, allegedly received a pay increase from McMahon despite decommissioning fewer racks than Plaintiff and exhibiting habitual tardiness. *Id.* ¶ 36. Plaintiff reported McMahon's denial of a pay increase to Klimczyk, who allegedly took no action in response. *Id.* ¶ 38.

On January 24, 2020, Plaintiff learned she was scheduled to work with Alfred on February 5, 2020. This discovery prompted her to email Klimczyk and express her discomfort in working with Alfred. *Id.* ¶¶ 24-25. By February 5, 2020, Plaintiff had still not received a response from Klimczyk, so she requested to leave work early. *Id.* ¶ 26.

On or around May 18, 2020, Plaintiff received a "Pivot document" from Defendant for tardiness and refusing to work with other coworkers. *Id.* ¶ 39. Where an employee has continued to underperform despite having received coaching and feedback, managers can choose to enter an employee into Defendant's Pivot program. *Id.* ¶¶ 39-41. The program provides employees with the option of (1) improving performance by being placed on a performance improvement plan ("PIP") or (2) voluntarily leaving Amazon with Pivot severance. *Id.* ¶¶ 42-43. Plaintiff allegedly received no prior counseling or a first warning before being placed in the Pivot program. *Id.* ¶ 46. Upon Plaintiff's formal appeal, Defendant reviewed McMahon's statements and found them inaccurate and unsubstantiated. *Id.* ¶ 47.

On or around July 17, 2020, McMahon chastised Plaintiff for failing to start rack pulls within thirty minutes of her arrival to work. *Id.* ¶ 67. Rack pulls require two technicians, and Plaintiff alleges McMahon castigated her for delays caused by the late arrival of her white male counterparts—neglecting to acknowledge her timely arrival. *Id.* ¶¶ 68-70.

Plaintiff allegedly reported to Defendant's upper management that McMahon displayed favoritism to her white male counterparts and that Klimczyk routinely failed to investigate Plaintiff's previous complaints. *Id.* ¶¶ 49-50. On or about August 3, 2020, Defendant issued her a written warning, advising that Plaintiff's complaints of discrimination regarding her managers and HR personnel were "abusive and harassing." *Id.* ¶¶ 49, 51. The write-up also outlined that should Plaintiff continue to complain of discrimination, she could be subjected to further "action up to and including termination of employment." *Id.* ¶ 52.

On or about August 13, 2020, McMahon allegedly reprimanded Plaintiff for taking her lunch break at 11:00 a.m., instructing her to coordinate with team members regarding the timing of her break. *Id.* ¶ 55. Plaintiff alleges that Defendant has no policy requiring team members to jointly agree on a time to take a lunch break and McMahon never instructed Plaintiff's white male counterparts to coordinate with other team members before taking lunch. *Id.* ¶¶ 56-57.

On or about August 14, 2020, McMahon allegedly failed to notify Plaintiff that Defendant had updated its policy regarding employee use of personal protective equipment ("PPE"), authorizing disciplinary measures for employees who did not wear PPE, including up to termination. *Id.* ¶¶ 58-59. Allegedly unaware of the policy change, Plaintiff presented to work without wearing her bump cap or safety glasses and was subject to counseling. *Id.* ¶ 60.

In addition to these specific alleged instances of unlawful conduct, Plaintiff also avers that her colleagues subjected her to a number of unlawful patterns and practices, including: (1)

subjecting her to higher performance requirements; (2) encouraging her to cut or treat her hair so that she could "wear her bump cap properly"; and (3) stating that Plaintiff would need to do something with her hair so that "she could keep her job." *Id.* ¶¶ 29, 62-63. Additionally, Defendant's policies permit employees a fifteen-minute grace period after their scheduled start time to arrive. *Id.* ¶ 71. Nevertheless, McMahon allegedly required Plaintiff to arrive at exactly her scheduled start time, with no grace period, while allowing her white male co-workers to arrive within or after the fifteen-minute grace period without discipline. *Id.* ¶¶ 71-74.

### B. Procedural Background

Based on Plaintiff's uncontested representation, she filed a charge of discrimination with the EEOC and received a Notice of Right to Sue on July 21, 2021. Dkt. 1 ¶¶ 5-6. On October 19, 2021, Plaintiff filed her Complaint which was served on Defendant on October 22, 2021. Dkt. 1. On November 12, 2021, Defendant timely filed the instant Motion to Dismiss (Dkt. 8) and Memorandum in Support (Dkt. 9), seeking to dismiss Count III of Plaintiff's Complaint for failure to state a claim. Defendant does not seek to dismiss the other claims Plaintiff alleges in the Complaint. On November 28, 2021, Plaintiff filed a Motion for Extension of Time to File Response (Dkt. 11) and Magistrate Judge Buchanan granted the Motion on November 30, 2021, extending the deadline for Plaintiff's Opposition to December 2, 2021 and the deadline for Defendant's Reply to December 7, 2021 (Dkt. 12). Plaintiff filed her Opposition to the Motion on December 2, 2021 (Dkt. 13), and Defendant's Reply was filed on December 7, 2021 (Dkt. 14).

### II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is

appropriate only if the well-pleaded facts in the complaint "state a claim to relief that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

### III. ANALYSIS

#### A. Motion to Dismiss Count III for Failure to State a Claim

Plaintiff's claim alleges that the disparate treatment she experienced on the basis of her race and sex amounts to a hostile work environment in violation of Title VII. Defendant argues Plaintiff has failed to plausibly plead a nexus between her race or sex and the alleged harassment

or that the alleged harassment was sufficiently severe or pervasive enough to create a hostile work environment.

To state a hostile work environment claim, a plaintiff must allege workplace harassment that was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) imputable to her employer. *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019). Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). Importantly, the severe and pervasive element of a hostile work environment claim includes "both subjective and objective components." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Thus, Plaintiff must therefore show she subjectively perceived her work environment as hostile and abusive, and a reasonable person considering all the circumstances would objectively view the harassment as severe.

As an initial matter, Plaintiff in her Opposition pleads facts from outside the Complaint to support her hostile work environment claim. It is a well-settled principle that a Plaintiff cannot draw upon additional facts beyond the complaint to oppose a motion to dismiss; therefore, the Court will not consider those allegations for the purposes of this motion. *Stewart v. Holder*, No. 1:16-CV-682, 2017 WL 4479612, at *3 n.5 (E.D. Va. July 19, 2017), *aff'd*, 710 F. App'x 120 (4th Cir. 2018).

It is uncontested by Defendant that Plaintiff has alleged conduct that was unwelcome and imputable to the employer, satisfying the first and fourth prongs of the analysis. However,

Defendant asserts Plaintiff has failed to satisfy the second and third prongs as she has not plausibly stated that the alleged conduct was based on a protected characteristic, either her race or her sex, and has failed to show the conduct was sufficiently severe and pervasive as to change the conditions of her employment.

Plaintiff's allegations of workplace harassment include a coworker "continuously touching her hair even after being asked by Plaintiff to stop," Dkt. 1 ¶ 21, and her male supervisor "constantly criti[cizing]" her afro-textured hair and encouraging her to cut or treat it so that she could "wear her bump cap properly," *id.* ¶ 62. Plaintiff also alleges that after she filed complaints with Defendant's human resources staff regarding the alleged discrimination and harassment, she was subjected to increased criticism, unfavorable job assignments, and a PIP, which Plaintiff contends were "tools used to create a hostile work environment." Dkt. 13 at 13.

Only harassment that occurs "because of" an individual's protected status can be used to support a hostile work environment claim. *Hartsell v. Duplex Prod., Inc.* 123 F.3d 766, 772 (4th Cir. 1997). For the purposes of this element and the allegations in the Complaint,[2] the Court examines whether Plaintiff pleads facts to support that her race or sex were motivating factors in the defendant's conduct, and specifically if that factual support raises the allegation above a speculative level. 42 U.S.C. § 2000e-2(m); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Considering the relevant facts in the light most favorable to Plaintiff, the allegations in the Complaint are conclusory and merely speculate that Plaintiff's race or sex were a motivating factor in Defendant's conduct.

---

[2] Plaintiff has not alleged impermissible consideration of her religion or national origin and therefore this Court focuses solely on her hostile work environment claim as it applies to her race or sex. *See* 42 U.S.C. § 2000e-2(m).

First, Plaintiff's allegations regarding her supervisor's critiques of her hair, although obviously unwelcomed and provocative, do not rise to the level of race-based or sex-based harassment that is protected under Title VII. While Plaintiff notes in the Complaint that she would style her afro-textured hair in a manner that permitted her bump cap to fit "securely," the Complaint notes that McMahon's criticisms focused upon her wearing it "properly." Dkt. 1 ¶¶ 61-62. At face value, these allegations plausibly suggest a supervisor ensuring employee compliance with company policy. *See Bass*, 324 F.3d at 765 (holding that "callous behavior by [a plaintiff's] superiors" is insufficient "to state a hostile work environment claim"). While Plaintiff contends that her white male coworkers did not receive the same criticisms regarding their bump caps from McMahon, comparing the lack of criticism of coworkers alone is insufficient to establish a plausible basis for believing race or sex was the true basis for McMahon's critiques.[3]

Plaintiff also fails to allege any specific nexus between the alleged hair touching and her protected status, leaving the Court to draw inferences as to how Plaintiff intends to satisfy the

---

[3] *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012) (holding conclusory allegations that an African American plaintiff was terminated based on his race supported only by comparisons to white coworkers would not survive a motion to dismiss without sufficient pleading to establish that they were actually similarly situated); *see also Garrett v. Cape Fox Facilities Servs.*, No. 1:19-CV-579, 2020 WL 265869, at *6 (E.D. Va. Jan. 17, 2020) (holding that although plaintiff alleged various strange statements from her coworkers and experienced difficulty working with them, she "pleaded no facts to suggest those interactions were motivated by her sex."); *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 530 (D. Md 2015), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016) (holding that plaintiff's status as only African-American in her group "does not permit a plausible inference that the unwelcome conduct was *based on* her race."); *but see Abdelbaki v. N. Va. Cmty. Coll.*, No. 1:21-cv-73, 2022 WL 811296, at **8-9 (E.D. Va. Mar. 16, 2022) (holding plaintiff sufficiently pleaded hostile work environment claim involving overt discussions of race and religion and alleged discriminatory conduct by the defendants); *Kenion v. Skanska USA Bldg., Inc.*, No. CV RDB-18-3344, 2019 WL 4393296, at *10 (D. Md. Sept. 13, 2019) (holding plaintiff sufficiently alleged that the defendant's conduct was "because of" sex where, as the only female supervisor, she was the only supervisor denied a pay raise and lost a promotion to a less-qualified white male intern whom she had trained).

second prong of the hostile work environment claim. The Court is not obligated to "fill in the gaps" as to the basis for alleged discriminatory behavior. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). Although Plaintiff has generally alleged that she was harassed because of her status as an African American and as a woman, these are conclusory allegations pleaded without factual support.

Plaintiff's allegations also do not clear the "high bar" for alleging sufficiently severe or pervasive workplace harassment under Title VII. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The Court has considered the totality of the circumstances in determining that the workplace conduct Plaintiff experienced, and although they were provocative and potentially offensive were not sufficiently severe or pervasive, when assessed by: (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *See Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011).

Plaintiff's allegations as to her coworkers' touching of her hair, while troubling, and obviously not the best management of the workplace environment, fail to establish the amount of factual detail as to frequency and severity that is required to satisfy the severe and pervasive prong of a hostile work environment claim. In support of her allegations Plaintiff notes only that Alfred "continuously" touched her hair, Dkt. 1 ¶ 21, on "many separate occasions," Dkt. 13 at 14. Failure to plead at least modest details that would allow the Court to assess the frequency and severity of allegedly harassing conduct can warrant dismissal of a hostile work environment claim. *See, e.g.*, *Jones v. HCA*, 16 F. Supp. 3d 622, 630-31 (E.D. Va. 2014) (dismissing hostile work environment claim where plaintiff failed to plead any specific allegations that could "shed any light into [the] severity or frequency" of the allegedly harassing conduct); *see also Skipper v. Giant Foods, Inc.*,

68 F. App'x 393, 399 (4th Cir. 2003) (holding plaintiff's daily exposure to racist graffiti in the workplace and vague allegations of using racial epithets was insufficient to substantiate a hostile work environment claim because of the lack of specificity as to context, frequency, and how the hostile act altered the terms and conditions of their employment).  Without pleading additional detail as to the specifics of actions by Plaintiff's coworker, Plaintiff fails to push the allegation over the line from inappropriate workplace conduct to actionable harassment. *See Wilson v. Gaston Cty.*, 685 F. App'x 193, 200 (4th Cir. 2017) (holding hair-pulling by a colleague to be workplace behavior that "falls short" of harassment).[4]

Nor do Plaintiff's allegations of increased criticism, unfavorable job assignments, and a PIP necessarily amount to creating a hostile work environment.  Workplaces are not always harmonious, and the Fourth Circuit has made clear that employment laws are not intended to govern minor workplace disagreements or personality conflicts between coworkers.  *See Sunbelt*, 521 F.3d 315; *see also Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) ("Title VII does not create a general civility code in the workplace." (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010))).  More specifically, courts have held that alleged nitpicking, micromanaging, unfavorable job assignments, and pretextual write-ups are insufficient to create a hostile work environment.  *See, e.g.*, *Guillen v. Esper*, No. 1:19-CV-1206, 2020 WL 3965007, at *14 (E.D. Va. July 13, 2017) (finding that plaintiff's allegations of "nitpicking," personality conflicts, disliked assignments, and generalized workplace grievances could not

---

[4] *Compare Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 793 (E.D. Va. 2013) ("[T]hree discrete acts over a three-year period, do not reach the level of 'severe' or 'pervasive' conduct that is required by the Supreme Court to state a claim for hostile-work-environment discrimination"), *with Jennings v. Univ. of N.C.*, 482 F.3d 686, 697-98 (4th Cir. 2007) (holding that harassing conduct was sufficiently pervasive to state a hostile work environment claim where the conduct was "persistent" and took place "almost every day or every other day").

11

establish that the issues were based on plaintiff's protected characteristic and were not enough to state a hostile work environment claim).

Although this Court is in no way condoning what appear to be dispiriting workplace conditions for Plaintiff, the conduct she alleges in support of her hostile work environment claim does not rise to the demanding level of a Title VII violation. As a result, the Court dismisses Count Three of the Complaint without prejudice.

### B. Request for Leave to Amend

In her Opposition, Plaintiff requests that if this Court grants Defendant's Motion to Dismiss, Plaintiff be given leave to file an amended complaint. Dkt. 13 at 14. Defendant argues the Court should reject Plaintiff's request for leave to amend, as Plaintiff has not provided the Court with the content of her proposed amendment or signaled as to what the purpose of the amendment would be.

Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "When justice so requires" is a discretionary determination to be made by the Court, and the Fourth Circuit has interpreted Rule 15(a) to provide that leave to amend can be denied where the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). An amendment is futile where the proposed changes to the complaint would not aid the action in withstanding a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). In order to assess whether an amendment to a complaint would be futile, Plaintiff must provide the Court with the substance of the amendment. *See Scruggs v. CHW Grp., Inc.*, No. 2:20-cv-48, 2020 WL 9348208, at *12 n.6 (E.D. Va. Nov. 12, 2020) (quoting *Roskam Baking Co., Inc. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002)).

12

Plaintiff did not file an amended complaint under Federal Rule of Civil Procedure 15(a)(1)(A) or 15(a)(1)(B), although she was granted a two-week extension to file responsive pleadings to the Motion to Dismiss. Fed. R. Civ. P. 15(a)(1)(A)-(B). At this stage, as no proposed amendment has been offered, the Court declines to consider whether granting leave to amend would be appropriate unless and until Plaintiff files a formal Motion to Amend, which should be filed no longer than 21 days after the date of this Memorandum Opinion and Order.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss Count Three of the Complaint (Dkt. 8) is GRANTED; and it is

FURTHER ORDERED that Count Three of the Complaint is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that if Plaintiff seeks to amend the Complaint (Dkt. 8), Plaintiff must file a Motion to Amend, with a proposed Amended Complaint attached, within 21 days of this Order.

It is SO ORDERED.

Alexandria, Virginia
August 8, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge